Jason M. Drangel (JMD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AES 7715)
asands@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*LHF Productions, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LHF Productions, Inc.,<br>*Plaintiff,*<br><br>v.<br><br>BITTORRENT USERS:<br>DOE – 104.246.33.250, DOE – 24.190.46.56,<br>DOE – 69.120.152.179, and DOE –<br>74.90.78.14;<br><br>*Defendants.* | **CIVIL ACTION No. _____**<br><br>**COMPLAINT**<br>**JURY TRIAL REQUESTED** |

LHF Productions, Inc. ("Plaintiff" or "LHF"), by and through its undersigned counsel, alleges as follows:

### NATURE OF THE ACTION

1.      This is a civil action for copyright infringement of a federally registered copyright in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). Plaintiff seeks injunctive relief, statutory damages, attorney's fees and costs, and such other relief as the Court deems proper.

## JURISDICTION, VENUE AND JOINDER

2.      This Court has Federal subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as an action arising out of violations of the Copyright Act.

3.      Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a) because Defendants reside in this district and, on information and belief, a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this judicial district, and has caused damage to Plaintiff in this district.

4.      Personal jurisdiction exists over Defendants because, upon information and belief, Defendants have committed the tortious conduct alleged in this Complaint in New York and in this judicial district, Defendants reside in New York, and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

## THE PARTIES

5.      LHF is a corporation organized under the laws of the state of Nevada with offices at 318 N. Carson Street, #208, Carson City, Nevada 89701, and is the owner of Plaintiff's Copyright (defined below) in the Motion Picture (defined below).

6.      The true identities of Doe – 104.246.33.250, Doe – 24.190.46.56, Doe 69.120.152.179, and Doe – 74.90.78.14 (collectively, "Defendants") are unknown to Plaintiff at this time; however, Plaintiff has been able to ascertain specific facts related to each Doe Defendant, including his or her Internet Protocol Addresses ("IP Address"), his or her Internet Service Provider ("ISP"), the specific time of the observed infringement, and the geographic area of the infringement to a reasonable degree of certainty proving that each Doe Defendant is

in fact located within this judicial district, all of which are set forth in **Exhibit A**, along with other identifying information that will assist Plaintiff in ascertaining the actual identity of Defendants.

7.    Upon information and belief each Doe Defendant is an individual whose conduct in this judicial district subjects him or her to the jurisdiction of this Court. Further, each Doe Defendant has been established as a user of the BitTorrent file distribution network ("BitTorrent"), the IP Addresses of each Doe Defendant has been observed and confirmed as downloading and distributing an Infringing Copy (defined below) of Plaintiff's Motion Picture (defined below), cooperatively through a subscription with the same ISP, Cablevision d/b/a Optimum Online ("Optimum Online"), during a two (2) day period using the BitTorrent network. Once Plaintiff obtains the true identities of each Doe Defendant, Plaintiff will amend the Complaint accordingly.

8.    Once the ISP is provided with the information included in **Exhibit A**, Optimum Online will be able to identify the parties assigned and responsible for each respective IP Address with particularity, such parties commonly called "subscribers".

9.    Each of the Doe Defendants has been observed distributing Plaintiff's Motion Picture (defined below) on multiple occasions which, together with other observed information, indicates that each Doe Defendant is either the subscriber, or a party known to the subscriber with permissive use of the subscriber's Internet service.

10.    Plaintiff intends to use the identity of such subscribers to obtain the identities of the users of the subscribers' Internet service on the date and time in which the Infringing Copy (defined below) of Plaintiff's Motion Picture (defined below) was downloaded and distributed using the BitTorrent network.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Motion Picture

11.     LHF is a film production company founded for the production and development of the major motion picture, *London Has Fallen* ("Motion Picture"), which was released in the United States on March 4, 2016.

12.     LHF is, and at all relevant times has been, the copyright owner of exclusive rights under the Copyright Act necessary to bring suit with respect to the Motion Picture.

13.     LHF is also the registered copyright owner of the United States copyright registration for the Motion Picture, Registration No. PA 1-982-831 ("Plaintiff's Copyright").  A true and correct copy of the foregoing certificate of registration is attached hereto as **Exhibit B** and incorporated herein by reference.

14.     The Motion Picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

15.     The Motion Picture is published and currently offered for sale in commerce.

16.     Defendants had notice of Plaintiff's rights in and to the Motion Picture through general publication and advertising, and more specifically, as identified in the content of the Motion Picture, advertising associated with the Motion Picture, and marketing and copies, each of which bore a proper copyright notice.

### BitTorrent and Peer-to-Peer Internet Piracy

17.     BitTorrent, also known as peer-to-peer file sharing, has become one of the most common systems for users to illegally dispense huge amounts of data, including motion pictures, in digital format.

18.     The BitTorrent protocol enables even computers with limited capacity and/or slow Internet connection speeds to exchange large files (such as motion pictures) without

4

creating a heavy workload for any individual source/computer. It allows users to interact directly with each other to: (1) make files stored on a user's computer (e.g., motion pictures) available for copying by other users; (2) search for files stored on another user's computer; and (3) transfer exact copies of files from one computer to another over the Internet.

19.    The initial file-provider intentionally makes a digital file (e.g. a motion picture), available for others to download. That initial file is called a "seed". At the time the seed file is created by the initial file-provider (i.e., seeding), each seed file is assigned a distinct identifier, known as a "hash". The hash makes it possible to identify identical copies of the same seed file.

20.    In order to distribute the large seed file, the BitTorrent protocol breaks a file into many small pieces, each of which is also assigned a distinct identifier, known as a "piece hash". Other users, or "peers", then exchange these small pieces among each other rather than attempting to share the large digital file as a whole.

21.    As additional peers request the file, each additional peer becomes a part of the network from which the file can be downloaded. Each new peer requesting the file receives pieces of the data from each peer who already has downloaded one or more parts of the file. This group of peers who cooperatively exchange and distribute pieces of the same file is referred to as a "swarm".

22.    After a peer receives all of the pieces of a requested file, that peer's BitTorrent client software reassembles the pieces so that the file (e.g., the complete motion picture) may be opened and utilized. At this point, the BitTorrent Protocol uses the hash to determine that the downloaded file is complete and accurate, i.e., that the peer has successfully downloaded the entire file (e.g., the complete motion picture), and that it is the exact seed file (i.e., the exact same copy of the motion picture) that was requested by the peer.

23.     Every peer who successfully downloads an infringing file using the BitTorrent protocol intentionally also becomes a source for other peers to copy that infringing file.    Since the BitTorrent protocol also generally limits a peer's ability to download unless he or she also uploads or shares, there is substantial incentive for each peer to remain online and continue to make files available for other peers to download because this will maximize his or her download speed.

### Defendants' Use of BitTorrent to Engage in Infringing Conduct

24.     In light of the critical acclaim surrounding individuals associated with the Motion Picture, Plaintiff has become the target of unscrupulous individuals who seek to steal the copyrighted content created by Plaintiff.

25.     Through its investigators, MaverickEye UG ("MaverickEye"), Plaintiff has learned that, without Plaintiff's authorization, each of the Defendants have used the BitTorrent protocol to search for, reproduce and distribute an Infringing Copy (defined below) of Plaintiff's Motion Picture to the public, thereby violating Plaintiff's exclusive rights protected by the Copyright Act.

26.     MaverickEye has observed and recorded each of the Defendants distributing the Infringing Copy (defined below) of Plaintiff's Motion Picture on multiple occasions, including at the dates and times set forth in **Exhibit A**.

27.     The downloading and distribution of the Infringing Copy (defined below) of Plaintiff's Motion Picture by each of the Defendants using the BitTorrent protocol arises out of the same series of related transactions and occurrences, as the infringing conduct occurred with each Defendant distributing the exact same file hash as part of the exact same swarm thorough the exact same ISP within the period starting on July 14, 2016 and ending on July 16, 2016

6

("Infringement Period"), raising questions of law and fact common to all Defendants. In effect, each of the Defendants joined cooperatively to form a network for the distribution of Plaintiff's Motion Picture, if not to each other, at least to the same third parties, during the Infringement Period.

28.     Collectively, Defendants' IP Addresses have also been observed as being associated with over six hundred and seventy (670) acts of unauthorized downloading and distribution of other pirated copyrighted content using the BitTorrent protocol. Thus, Defendants conduct is most certainly intentional, willful and persistent.

29.     Based on the observed activity, Defendants are more than merely one-time or occasional participants in the unauthorized BitTorrent exchange of pirated copyrighted content, but are rather significant contributors to the BitTorrent economy of piracy that exploits copyrighted content, causing harm to Plaintiff and the public in general.

30.     Subsequent to the initial search for, download and distribution of the Infringing Copy (defined below) of Plaintiff's Motion Picture by each Defendant, each Defendant did in fact continue to participate in the BitTorrent network by making the Infringing Copy (defined below) of Plaintiff's Motion Picture freely available to additional individuals for download and distribution during the Infringement Period.

31.     Upon information and belief, Defendants initiated their infringing conduct by intentionally downloading and installing a BitTorrent Client (i.e., software that allows users to easily upload, search for and download files using the BitTorrent protocol).

32.     Upon information and belief, Defendants then used their respective BitTorrent Client to purposefully search for and intentionally copy and download Plaintiff's Motion Picture, hash identifier: 6B30D9F4FB05238053EA9201DDC079FF27923D59 ("Infringing Copy").

Once each Defendant knowingly and purposefully searched for and downloaded the Infringing Copy, each Defendant then made the Infringing Copy available for copying and downloading by other BitTorrent users, thus, willfully joining in the collective effort to distribute the Infringing Copy of Plaintiff's Motion Picture, and each Defendant benefited by continuing to make the Infringing Copy available, by gaining faster download speeds.

33.     Upon information and belief, by the actions described above, Defendants deliberately searched for, reproduced and distributed the same exact Infringing Copy and participated in the same swarm with other Defendants by knowingly and purposefully searching for Plaintiff's Motion Picture, copying and downloading the identical file, and collectively worked with other Defendants to further the unauthorized and infringing copying and distribution of the Infringing Copy of Plaintiff's Motion Picture by making the exact same Infringing Copy of Plaintiff's Motion Picture available to each other and others during the two day period.

34.     Upon information and belief, Defendants' IP Addresses have each been observed and confirmed as distributing Plaintiff's Motion Picture multiple times, with the Defendants combined, observed distribution of Plaintiff's Motion Picture occurring over two hundred and seventy (270) times.

35.     Through the use of geolocation and the following websites: www.iplocation.net, www.ipfingerprints.com, and www.ip-address.org ("IP Address Locators"), the IP Addresses used by Defendants have been traced to the State of New York, and more specifically, upon information and belief, to this judicial district.  Plaintiff's use of the IP Address Locators establishes, to a reasonable degree of certainty, that Defendants' IP Addresses were assigned to individuals located within this judicial district.

36.    Defendants' IP Addresses were, at the time of infringement, managed by Optimum Online, which, upon information and belief, generally assigns an IP Address to a single party for extended periods of time and provides Wi-Fi systems with notable pre-installed security and passwords.

37.    Upon information and belief, in addition to pre-installed security and passwords assigned to Defendants by Optimum Online, subscribers are directed to not allow third parties access to their Internet service and cautioned by Optimum Online that they are responsible for conduct through their Internet service.

38.    The records maintained by Optimum Online will identify Defendants, or, in the alternative, the subscribers who contracted with Optimum Online for service, who will in turn, likely have knowledge that will lead to the precise identities of Defendants.

39.    Plaintiff intends to seek initial discovery in order to subpoena records from Optimum Online, specifically limiting this discovery to: the subscriber and/or each Defendant's true name associated with each IP Address, the complete service address for each IP Address, and the e-mail address relating to each IP Address, so that Plaintiff may ascertain the true identity of each Defendant.

**BitTorrent and Peer-to-Peer Internet Piracy's Harmful Effect on the State of New York**

40.    In New York City alone, the filmed entertainment industry contributes nearly $9 billion to the local economy each year, a figure that has increased 21%, or $1.5 billion, since 2011. The entertainment industry in New York City employs hundreds of thousands of individuals, directly and indirectly, who are involved in all aspects of the community. Since the beginning of 2014 through the present, over five hundred (500) film productions have called New York City home, and have brought countless dollars and jobs to the economy.

41.    In fact, the State of New York's Governor's Office of Motion Picture & Television Development offers several programs to the film and television industry in the form of tax credits and sales tax exemptions. The New York State Film Tax Credit, which is designed to increase the film production and post-production industry presence in New York, with the goal of creating a positive impact on the State's economy, allocates credits of $420 million per year to companies in order to encourage film projects in New York, and help create and maintain film industry jobs. The Program itself is limited to feature films, television series, relocated television series, television pilots and films for television, and contains two (2) separate components: the Film Production Credit and the Post-Production Credit, which are available for companies that film a substantial portion of their project in New York State and companies that contract their post-production work to companies in New York State despite the project being filmed predominantly outside New York, respectively. These incentives, which have been followed recently in other states tied closely to the film industry as a whole, such as a California, have brought monumental revenue to local and state entities, and have helped in the increase of jobs throughout the State.

42.    In addition to the films that shoot in New York City, the incentives have contributed to the appearance of two of the largest studios in the United States with headquarters in Brooklyn, New York, as well as other major studios, maintaining a year-round presence in New York.

43.    Accordingly, piracy on the level of that of Defendants levies a significant cost and threat to the entertainment industry, translating to the loss of millions of dollars and an incalculable number of additional jobs.

44.    The impact of such Internet piracy and the continuing threat of damage to the film

and entertainment industry as a whole through the means of peer-to-peer and BitTorrent piracy led the State of New York to enact N.Y. Pen. Law §§ 275.15 & 275.20, which provide punishment for the manufacture or sale of an unauthorized recording, including those individuals who use peer-to-peer or BitTorrent piracy to distribute works.

45.    Giving effect to 17. U.S.C. §§ 101 et seq., the enforcement of intellectual property rights, as well as the fight against counterfeiting and piracy, is a critical issue of importance not only to the United States, but the State of New York as well.

## CAUSE OF ACTION

### FIRST CAUSE OF ACTION
### (Federal Copyright Infringement)

46.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs.

47.    Plaintiff is the exclusive owner of a copyright in the Motion Picture, including the rights protected by the registration of **Exhibit B**.

48.    Each Defendant had actual notice of Plaintiff's exclusive rights in and to the Plaintiff's Copyright in the Motion Picture.

49.    Without Plaintiff's authorization, Defendants knowingly and intentionally copied, reproduced and distributed Plaintiff's Motion Picture using the BitTorrent protocol, thereby violating Plaintiff's exclusive rights in and to Plaintiff's Copyright.

50.    Defendants' conduct was persistent and pervasive such that Defendants willfully acted with the intent to cause Plaintiff harm and deprive Plaintiff and others of their rights.

51.    Defendants' infringement, as alleged herein, was committed "willfully" within the meaning of 17 U.S.C. § 594(c), and such knowing and intentional infringement has caused, and will continue to cause, substantial and irreparable harm to Plaintiff, for which there is no

adequate remedy at law.  Plaintiff is therefore entitled to injunctive relief and statutory damages for willful copyright infringement of up to per infringement pursuant to 17 USC § 504(c), and to reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.      For an award of Plaintiff's statutory damages pursuant to 17 U.S.C. § 504;

B.      For Defendants and all persons acting under the direction, control, permission, or authority of Defendants to be enjoined and restrained from reproducing or distributing or otherwise exploiting Plaintiff's Motion Picture using the BitTorrent protocol or any other method, except pursuant to a lawful license or with the express authority of Plaintiff.

C.      For Defendants and all persons acting under the direction, control, permission, or authority of Defendants to be directed to destroy all copies of the Motion Picture that Defendants have downloaded onto any computer hard drive, flash drive, server, or other storage device without Plaintiff's authorization and to destroy all copies of the Motion Picture transferred onto any physical medium or device in Defendants' possession, custody, or control.

D.      For Plaintiff's reasonable attorney's fees;

E.      For all costs of suit; and

For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated:  August 3, 2016                    Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____

Jason M. Drangel (JMD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AES 7715)
asands@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*LHF Productions, Inc.*